**Andrew M. Calamari**
**Sanjay Wadhwa**
**Thomas P. Smith, Jr.**
**John J. Graubard**
**Alix Biel**
**Howard Kim**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0084 (Graubard)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**STEVEN WISE,**<br><br>　　　　　　　　　　　　Defendant. | 1:16-cv-<br><br>ECF Case<br><br>COMPLAINT |

　　　　Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against defendant Steven Wise ("Wise"), alleges as follows:

### SUMMARY OF ALLEGATIONS

　　　　1.　　　　This case involves violations of a Commission order issued in 2005 ("2005 Commission Order") that, *inter alia*, barred Wise from "participating in any offering of a penny stock, including ... inducing or attempting to induce the purchase or sale of any penny stock." Notwithstanding the 2005 Commission Order, which alleged misconduct involving a penny stock, Wise solicited several private companies during the summer of 2015 to issue publicly

trading shares. In particular, Wise was closely involved in plans for an Oregon-based start-up company to reverse merge into a publicly traded shell company.

## VIOLATIONS

2. By virtue of the conduct alleged herein, Wise, directly or indirectly, singly or in concert, has engaged in acts, practices, and courses of business that constitute violations of Section 15(b)(6)(B)(i) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(b)(6)(B)(i)].

## NATURE OF PROCEEDINGS AND RELIEF SOUGHT

3. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], seeking a final judgment: (i) restraining and permanently enjoining Wise from engaging in the acts, practices, transactions, and courses of business alleged herein; (ii) imposing civil monetary penalties upon Wise; and (iii) any other relief the Court may deem just and appropriate.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action under Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa], and 28 U.S.C. § 1331.

5. Venue is proper in the Southern District of New York under Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1391. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York and were effected, directly or indirectly, by making use of the means and instruments of transportation or communication in interstate commerce, or the mails. For instance, Wise proposed penny stock offerings to principals of the hedge fund at the fund's office in New York, New York.

**DEFENDANT**

6. **Steven Wise**, age 54, is a resident of Woodmere, New York.

**FACTS**

A. **The Commission's 2005 Order**

7. From 2003 through 2005, Wise was the chief executive officer of an Ohio issuer that purported to be in the business of selling collectible action figures and play sets over the Internet and through telemarketing.

8. An investigation by Commission staff showed that Wise or his nominees controlled approximately 15 million of the issuer's 26 million common shares outstanding. The investigation further revealed that in order to increase the demand for the shares and inflate the share price, Wise and an associate paid kickbacks of shares to at least three registered representatives corresponding to the number of shares the registered representatives induced their customers to buy; the kickbacks were not disclosed to the customers.

9. On September 5, 2003, the Commission instituted administrative and cease-and-desist proceedings against Wise and a co-respondent relating to manipulation of a penny stock.

10. On January 25, 2005, the Commission accepted Wise's offer of settlement and issued an Order finding that Wise willfully violated Section 17(a) of the Securities Act of 1933 [15 U.S.C. §§ 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The 2005 Commission Order required Wise to cease and desist from committing or causing any further violations of those statutes and the rule, barred him from participating in any offering of a penny stock, prohibited him from acting as an officer

or director of any publicly-traded company, and required him to pay civil penalties. *In re Steven Wise*, Exchange Act Rel. No. 51077, 2005 SEC LEXIS 159 (Jan. 25, 2005).

11. In a parallel criminal action based on the same misconduct as in the Commission's Order, Wise pled guilty to one count of securities fraud and two counts of conspiracy to commit securities fraud, and was sentenced to fifty-one months incarceration followed by five years of supervised release, which ended January 6, 2016,a nd was ordered to pay more than $2 million in restitution. *United States of America vs. Steven Wise*, Case No. 1:04-cr-00069 (E.D.N.Y.2004).

**B.     Wise's Activities Involving Potential Penny Stock Companies in 2015**

12. In the spring of 2015, Wise approached a hedge fund in New York City that invested in start-up companies and helped them begin trading publicly. Wise discussed plans concerning several companies with the hedge fund principals, which,h ad the plans come to fruition, would have caused each of the companies to issue shares that meet the Commission's definition of a penny stock.

13. Wise met regularly with principals of the hedge fund during the spring and summer of 2015 to pitch his ideas. Detailed below are three such ideas Wise brought to the hedge fund, seeking its help in offering shares to the public.

The Oregon Lighting Company

14. In 2014, a Beaverton, Oregon lighting entrepreneur needed money for prototypes of a new type of cinematographic light he invented. He raised $500,000 from a group of Long Island, New York investors that included Wise's sister and Wise's employer. By 2015, Wise was advising the investor group, and the lighting company needed more money for production.

4

Wise suggested that if the company offered shares to the public it would have sufficient money to pay its bills and grow.

15. In the spring of 2015, Wise brought the lighting entrepreneur to meet the hedge fund principals at the fund's New York City office. The hedge fund principals suggested the lighting company reverse merge into a shell company with which they already were working. A letter of intent and term sheet were drafted and emails were exchanged among the parties setting forth the plan. Wise handled certain corporate changes for the lighting company, assisted with resolving billing disputes with its vendors, and assisted the company in presenting its financials in a manner suitable for a public company.

16. As Wise became more involved with the lighting company's finances, the entrepreneur sought information about him. At no time did Wise reveal to the entrepreneur or any of his representatives that Wise had been barred by the Commission from participating in any penny stock offering, or that he had been convicted of securities fraud.

17. When the lighting entrepreneur discovered Wise's regulatory background in late summer 2015, he severed all communications with Wise and dropped the plans to reverse merge into a publicly trading company. He shared his discovery with one of the hedge fund principals, who also ceased all communication with Wise after the summer of 2015.

The New York Wristwatch Company

18. Concurrent with his efforts on behalf of the Oregon lighting company in the spring of 2015, Wise also sought to assist in the public offering of shares of a Staten Island, New York wristwatch company.

19. Wise and the hedge fund principals met with the wristwatch company president and toured the watch company's plant. The parties discussed registering the wristwatch company's shares with the Commission and offering them to the public.

20. Wise sent the wristwatch company president a term sheet prepared by the hedge fund, which the company president signed in June 2015. However, the offering never came to fruition.

The New Jersey Scanning Company

21. Also in the spring and summer of 2015, Wise pitched a third company to the hedge fund for a public offering and investment. The third company, based in Springfield, New Jersey, was a family-run operation that scanned business documents.

22. Wise introduced the president of the scanning company to the hedge fund principals. The hedge fund planned to invest in the scanning company shares after they were registered with the Commission and offered to the public. A term sheet for the investment was prepared.

23. Wise acted as intermediary between the scanning company and the hedge fund, forwarding questions from the company president to the hedge fund principals, then forwarding the principals' responses back to the company president. The negotiation, however, ended without results.

## CLAIM FOR RELIEF

### Violations of Section 15(b)(6)(B) of the Exchange Act

24. The Commission re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 23.

25. During the spring and summer of 2015, Wise was subject to the 2005 Commission Order barring him from "participating in any offering of a penny stock, including: acting as a promoter, finder, consultant, agent or other person who engages in activities with a broker, dealer or issuer for purposes of the issuance or trading in any penny stock, or inducing or attempting to induce the purchase or sale of any penny stock."

26. Without the consent of the Commission, and in contravention of the 2005 Commission Order, Wise willfully participated in an offering of a penny stock by acting as a "person who engages in activities with a[n] ... issuer for purposes of ... attempting to induce the purchase or sale of any penny stock."

27. The stocks Wise intended to offer would have qualified as penny stocks because they were equity securities that did not meet any of the exceptions from the definition of penny stock contained in Section 3(a)(51) of the Exchange Act [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 thereunder [17 C.F.R. § 240.3a51-1].

28. By reason of the foregoing, Wise, directly or indirectly, violated, and, unless enjoined, will again violate, Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. § 78o(b)(65)(B)(i)].

**PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court issue a Final Judgment:

**I.**

Permanently restraining and enjoining defendant Wise and his agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating Section 15(b)(6)(B) of the Exchange Act [15 U.S.C. § 78o(b)(6)(B)], pursuant to Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)].

**II.**

Ordering defendant Wise to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws.

**III.**

Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 2, 2016

By: _____

Andrew M. Calamari
Sanjay Wadhwa
John J. Graubard
Thomas P. Smith, Jr.
Alix Biel
Howard Kim
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0084 (Graubard)
Email: GraubardJ@SEC.gov

8